CHAS. S. STIFFT CO., INC., v. FLORSHEIM.

4-6681                                                    159 S. W. 2d 748

Opinion delivered March 16, 1942.

*John Sherrill* and *Frank Wills,* for appellant.
*Taylor Roberts* and *E. R. Parham,* for appellee.

SMITH, J.   Sidney H. Florsheim was a minority stockholder in the Chas. S. Stifft Company, a corporation engaged in the retail jewelry business, and was employed by that company for twenty-nine years at a salary of $5,200 per year, payable $100 per week, as its credit manager.   Through the action of its stockholders, in which Florsheim concurred, the Stifft Company decided to sell its business to a new corporation, composed entirely of different stockholders, to be known as the Chas. S. Stifft Co., Inc.  The Stifft Company had operated its business in premises leased from the Gus Blass Company.  The new corporation desired a transfer and renewal of this lease to it, and to that end negotiations were conducted with Noland Blass, who was related by marriage to Florsheim and was the president of the Gus Blass Company.  A contract for this purpose was entered into, and the memorandum from which the contract was to be prepared contained the following recital that ''New lessee to be mentioned in the lease is to employ Mr. Sidney Florsheim for as long as his work is satisfactory at a reasonable salary.''

When the new lease from the Blass Company to the new corporation was written no reference was made to this recital, but the new corporation took over the assets and business of the old, and for a time retained all the old employees.

The testimony is in irreconcilable conflict as to the contract under which Florsheim continued his employment.  He testified that he was employed for one year from April 2, 1940, at a salary of $3,000 per year, payable in weekly installments of $60 each. It was commented on that a salary of $60 per week would exceed $3,000 per year; but the president of the new corporation stated that bonuses which he would probably pay would equalize this difference.  The president of the new company testified that all employees were hired on a weekly basis, and that no employee had an annual contract.  Florsheim's employment was terminated June 30, and this suit, later brought for the breach of the contract, was defended upon the grounds that Florsheim was incapable of doing the work required of him; and that his services were not

satisfactory; and that the company's president, who was its general manager, had no authority to employ any one except from week to week.

As is apparent from this brief statement, the case involved depends upon the decision of these questions of fact, which were, by consent, submitted to the court sitting as a jury. Florsheim's testimony was to the effect that he was employed for a year beginning April 2, 1940, at a salary of $3,000 per year, payable weekly, and that he was paid for a time on that basis, and that he was discharged for the reason solely that he refused to accept a reduction in salary. A number of facts and circumstances were detailed in evidence which tends to discredit and contradict this testimony of Florsheim; but these were, at last, all questions for the court sitting as a jury, and no useful purpose would be served by reciting the conflicting testimony. This is equally true as to the question of the authority of the president and general manager to employ Florsheim for a year, rather than from week to week, which the president testified was the limit of his authority.

It was held in the case of *Moline Lumber Co.* v. *Harrison*, 128 Ark. 260, 194 S. W. 25, 11 A. L. R. 466, (to quote the headnote in that case) that "Where the matter of duration in a contract of employment is not specified in words, the hiring being at a specified rate or a specific sum per year, the contract will be construed as a hiring for the full year's period."

Here, Florsheim's testimony is to the effect that he was employed at a salary of $3,000 per year, payable in weekly installments, and that he was employed for the period of a year. Suffice it to say that the court accepted as true the testimony offered on Florsheim's behalf, as is indicated in the memorandum opinion filed by the trial judge, upon which a judgment in Florsheim's favor for $1,487.50 was entered.

At the time of the trial, the year covered by the contract which Florsheim testified he had entered into had expired. He had earned $780 under the contract, which had been paid him. He had during the year otherwise

earned $372.50, but had been unable to earn any more. Florsheim was charged with these two items which total $1,152.50. During the year Florsheim paid a visit of six weeks' duration to his son in Chicago, and the court charged him with this time at $60 per week, amounting to $360, and credited that sum on his demand, making total credits of $1,512.50, and judgment was rendered for the $3,000, less these credits, or $1,487.50. From this judgment the company has appealed; and Florsheim has prosecuted a cross-appeal.

For reasons already stated, the judgment on the direct appeal will be affirmed.

We are of the opinion also that the judgment on the cross-appeal should be affirmed, for the reason that the testimony supports the finding of the court below that Florsheim had gone to Chicago, not in search of employment, but on a vacation.